IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER WARD PLAINTIFF

v. Civil No. 12-5096

MICHAEL LONG DEFENDANT

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Christopher Ward, proceeds *pro se* and *in forma pauperis.*

Although serving a term of imprisonment at the Arkansas Department of Correction (ADC), Ward was at the times pertinent to this lawsuit, and is now, incarcerated in the Benton County Detention Center (BCDC). Ward contends that on April 21 or April 22, 2012,[1] Officer Michael Long used excessive force against him. Ward is suing Long in his personal capacity.

Pending before me for report and recommendation is the Defendant's motion for summary judgment (Docs. 23-25). Defendant has also demanded a trial by jury. Plaintiff was allowed to present his response to the summary judgment motion in an evidentiary hearing held on March 19, 2013.

**1. Background and Evidence Presented**

At the March 19th hearing, the following witnesses testified: (1) the Plaintiff, Christopher Ward; and (2) the Defendant, Michael Long. For discussion purposes, the testimony of these witnesses will be summarized.

**Christopher Ward**

Ward testified that he was transferred from the ADC to the BCDC on April 20, 2012, to face new criminal charges that had been filed against him. See also Deft's Ex. 1-A. In the morning on

[1] Long's incident report lists the date of the encounter as April 21st. Plaintiff's Exhibit. 1 (hereinafter Plff's Ex.).. However, the video is date stamped April 22nd. Defendant's Exhibit 1-D (Deft's Ex.). Additionally, the report about contraband found in Ward's cell lists the incident date as April 22nd. Plff's Ex. 3.

April 22nd, Long came to D-pod to escort Ward to the "hole." Ward testified that he was walking on the right side of the hallway with his hands behind his back, as inmates are instructed to do. He was not in restraints.

Ward testified that he made the statement that Long was a "piece of shit." Ward denied screaming or making any statement about wishing that Long would die.

In Ward's opinion, the statement provided no justification for Long to touch him. Ward believed Long to be vindictive and mean. Ward admitted that on other occasions he had said "stuff" to Long.

Ward testified that after he made the statement, Long placed him against the wall and was grinding Ward's shoulder into it. In Ward's opinion, Long was attempting to get Ward to react so that Long could "do what he wanted." Ward testified that the video showed it all.

Long called for another deputy and instructed the deputy to consider Ward to be aggressive. According to Ward, he sustained a couple of bruises to his hip bone and his pre-existing shoulder injury was aggravated. Ward testified that a few weeks later, a filling in his front tooth fell out; he believes this related back to the April 22nd incident.

Ward submitted a request for medical care. He was not seen but Ibuprofen was ordered. On April 23rd, Ward asked for a refill of his Ibuprofen. Plff's Ex. 20. Approximately a month later, Ward was transferred to the ADC. When he was seen by the nurse after his transfer to the ADC, Ward did not mention his bruises or any injury allegedly caused by Long's conduct. Ward, however, testified that the ADC fixed his filling.

Ward testified that he had been involved in several situations with Long that resulted in his being charged with disciplinary violations. For instance, Ward testified that on April 10th, Long, while searching Ward's property found several items considered to be contraband. Plff's Ex. 7. Long charged Ward with a disciplinary violation for concealing items from jail staff. Id. On appeal, the disciplinary charge was overturned. Plff's Ex. 8. That same day, Long charged Ward with stealing or being in possession of stolen property. Plff's Ex. 27. This incident stemmed from

Ward's attempt to take a second meal tray. Id.

On April 11th, Ward refused to obey an order given by Long to keep his hands behind his back. Plff's Ex. 9. Ward was charged with refusing to obey an order of a deputy or member of the jail staff and failing to comply with a deputy's order in a timely manner. Plff's Ex. 10. The disciplinary was overturned on appeal. Id. Ward submitted grievances about these incidents. Plff's Exs. 11-12. Ward also testified that he knew Long was involved in an incident with another inmate at approximately the same time.

**Deputy Michael Long**

Long testified that he currently works at the BCDC and worked there in April of 2012. He knew Ward from prior incarcerations.

Long testified that on April 22nd, he went to place Ward on lock down to serve the remaining time stemming from a disciplinary conviction that occurred during a prior incarceration. Long asserted that Ward was making statements like he hoped Long "would f------ die." Long believed that Ward was attempting to provoke him into taking the encounter to a physical level.

Long placed Ward against the wall; to hold Ward in this position, Long put his forearm on Ward's back. Long testified that Ward started screaming as soon as he put his forearm on Ward's back. Long called for backup but it took Deputy Xiong awhile to arrive. Long testified the only time he put his hands on Ward was when he held him against the wall. Long merely followed along as Xiong escorted Ward to lock down.

Long completed an incident report about his encounter with Ward. Plff's Ex. 1. On April 10th, Long charged Ward with a disciplinary violation for concealing items from jail staff. Plff's Ex. 7.

**Video**

Defendant submitted as an exhibit a video of the incident. Deft's Ex. 1-D. There is no audio recording.

The video begins with Long and Ward in the Pod E hallway. Ward is on the right side of the

hallway with his hands behind his back. Long is walking to the left and slightly behind Ward.

When they are approximately half-way down the hallway, Long reaches out with his right hand and grasps Ward's left shoulder and presses him into the wall. Ward does not struggle or resist.

Initially, Long is leaning into Ward and appears to be talking to him. Long requests backup and then pulls slightly away from Ward and is looking down the hallway for his backup. At this point, Long's shoulder and right arm down to the elbow are visible and there is no indication that Long is grinding his forearm into Ward's shoulder. At no time does Ward appear to be in distress. Officer Xiong appears and escorts Ward the remainder of the way with Long walking behind them.

**2. Applicable Standard**

In this case, as noted above, there is a pending motion for summary judgment. Additionally, Defendant has demanded a trial by jury. A pretrial evidentiary hearing may be utilized to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Johnson v. Bi–State Justice Center, 12 F.3d 133, 135 (8th Cir. 1993)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). When both sides present evidence, the procedure "resembles a summary judgment motion with live evidence." Id. The Court must avoid credibility determinations, believe the Plaintiff's evidence, and draw all justifiable inferences in the Plaintiff's favor. Id. at 136.

**3. Discussion**

Ward testified that he was in convicted status on April 22nd. "[T]he Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." Wilson v. Spain, 209 F.3d 713 (8th Cir. 2000)(citing Whitley v. Albers, 475 U.S. 312, 318-322 (1986)). "The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers regardless of whether an inmate suffers serious injury as a result." Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002)(citations omitted). The Supreme Court has held that when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson v. McMillian,

503 U.S. 1, 9 (1992).

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000) (quoting Hudson, 503 U.S. at 6-7). To make this determination, the court is to consider, among other things, the following factors: "the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate." Jones, 207 F.3d at 495 (citations omitted).

"[F]orce that is excessive within the meaning of the Eighth Amendment is compensable if it causes the prisoner actual injury, even if the injury is not of great significance." Howard v. Barnett, 21 F.3d 868, 873 (8th Cir. 1994); see also Wilkins v. Gaddy, 559 U.S. 34, ___, 130 S. Ct. 1175, 1180 (2010)(the core judicial inquiry is the nature of the force and not the nature of the injury); Story v. Norwood, 659 F.3d 680, 687 (8th Cir. 2011)(excessive force claims do not necessarily fail merely because the injury may be *de minimus*). The Court has recognized that "it is possible for a use of force to be excessive and in violation of the Eighth Amendment, and yet result in injury having no or only nominal monetary value." Foulk v. Charrier, 262 F.3d 687, 701 (8th Cir. 2001).

Keeping these principles in mind, I turn to an examination of the evidence presented. The most telling evidence is the video itself. The video shows Long merely turning Ward towards the wall. Very little force was used to accomplish this. While Long kept Ward pressed against the wall until Xiong arrived, Ward showed no signs of distress.

Construing the evidence in Ward's favor as I must, there is no genuine issue of material fact as to whether the force applied was excessive. The evidence simply does not suggest that Long used force maliciously or sadistically to cause harm. Physical force was used; however, the force was not excessive.

**4. Conclusion**

For the reasons stated, I recommend that Defendant's motion for summary judgment (Docs. 29-31) be granted and judgment entered in favor of the Defendant.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of May 2013.

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE